IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00486-PAB-SKC

DAVID COLLARDEY,

    Plaintiff,

v.

ALLIANCE FOR SUSTAINABLE ENERGY, LLC, and
JOSEPH THILL,

    Defendants.

---

# ORDER

---

This matter is before the Court on Plaintiff's Objection to Magistrate Judge's Order Denying Discovery Related to Employer's Investigation [Docket No. 29].

On February 26, 2018, plaintiff filed this lawsuit alleging that defendant Alliance for Sustainable Energy, LLC ("Alliance") discriminated against him on the basis of disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, when it terminated his employment on November 17, 2016. Docket No. 1 at 14-15, ¶¶ 81-92. Plaintiff also asserts claims under Colorado law for wrongful discharge and violation of Colo. Rev. Stat. § 24-34-402.5 against Alliance and outrageous conduct against defendant Joseph Thill. *Id.* at 16-19, ¶¶ 93-116.

Six months after Alliance terminated plaintiff, plaintiff received an email from Julie Pate of Employment Compliance Solutions, LLC indicating that she was

"conducting an internal investigation" into complaints made by "current and former security employees." See Docket No. 29-1. On August 3, 2018, plaintiff served Request for Production No. 9, which requested "[a]ll documents related to an investigation that was being conducted by Julie Pate and 'Employment Compliance Solutions LLC' in and around May 2017, regarding complaints made by 'current and former security employees,' which are believed to include complaints and/or concerns regarding Defendant Joseph Thill, including, but not limited to, any report(s) that were produced, interview summaries and notes, emails, tape recordings, and all documents related to the Pate investigation." Docket No. 29 at 3, ¶ 5. Alliance objected to the request on the ground that "it [sought] documents in the possession of a third party . . . that are subject to the attorney-client privilege and/or the work product doctrine." *Id.*, ¶ 6. On November 23, 2018, the parties filed a joint statement outlining their respective positions on the requested discovery. Docket No. 25. Plaintiff argued that the documents related to the internal investigation conducted by Ms. Pate are "highly relevant to Plaintiff's allegations against Defendant Thill" and would help plaintiff "to identify other individuals who observed Mr. Thill's inappropriate behavior in the workplace." *Id.* at 2. Plaintiff further asserted that the investigation documents were not protected by attorney-client privilege or the work product doctrine because (1) Ms. Pate was hired as an investigator, not outside counsel, and (2) the materials were not prepared in anticipation of plaintiff's litigation. *Id.* at 3-4. Defendant responded that the attorney-client privilege precluded disclosure of the investigation materials because Ms. Pate was hired by Alliance's in-house counsel "to gain information through an investigation which was necessary for the in-house attorney to render legal advice." *Id.*

at 4. In addition, defendant contended that Ms. Pate's investigation notes, summaries, and report constituted protected work product because they were prepared in anticipation of litigation and "intended to remain confidential." *Id.* at 5.

On November 28, 2018, the magistrate judge held a hearing on the discovery dispute during which he determined that the information pertaining to the Pate investigation was protected from disclosure by both attorney-client privilege and the work product doctrine. Docket No. 27; Docket No. 34 at 23-27. The magistrate judge ordered Alliance to "provide plaintiff with a list of the names of individuals that were interviewed by Ms. Pate," but declined to require production of the documents related to the Pate investigation, including the "investigative report, the witness summaries associated with that report, e-mails between Pate and in-house counsel or any of the other materials requested by Request for Production Number 9." Docket No. 34 at 28. On December 12, 2018, plaintiff filed an objection to the magistrate judge's ruling, Docket No. 29, to which Alliance responded on December 26, 2018. Docket No. 35.

Plaintiff's objection pertains to a non-dispositive discovery matter. When reviewing a party's objection to a magistrate judge's order on a non-dispositive matter, the Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997). The clearly erroneous standard "requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United*

3

*States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Plaintiff asserts that the magistrate judge's ruling precluding disclosure of Ms. Pate's investigation notes and interview summaries was clearly erroneous on the following grounds: (1) there is insufficient evidence in the record that Ms. Pate's "outside legal advice was the primary purpose of the investigation," Docket No. 29 at 8 (internal quotation marks omitted); (2) there is insufficient evidence that Alliance requested the investigation in anticipation of litigation or that the investigation documents "contain any mental processes or analysis of the investigator or any Alliance attorney," *id.* at 9; (3) the magistrate judge based his determination of plaintiff's "substantial need" on a misinterpretation of plaintiff's argument related to the work product doctrine, *id.*; and (4) the magistrate judge erred in finding that plaintiff could have obtained the same information by other means. *Id.* at 10.[1]

Under federal common law, the attorney-client privilege generally applies to "communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981)); *see also In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (stating that a "critical component of the [attorney-

---

[1]Plaintiff does not challenge the magistrate judge's ruling on Ms. Pate's Executive Summary, which is also referred to in the parties' briefing as the "final report." *See* Docket No. 29 at 6 n.1 (assuming, for purposes of the objection, that "the Executive Summary does actually contain 'legal advice' or 'legal strategy' for consideration by in-house counsel"), 8 (acknowledging that the "final report might be privileged"), 9 (arguing that the evidence is insufficient to show that the fact-based investigation documents, "not including the 51-page final report, contain any mental processes or analysis of the investigator or any Alliance attorney").

client] privilege is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence" (internal quotation marks omitted)). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotation marks and bracket omitted). On the other hand, courts have extended the privilege to communications between a client and a third-party where the "communication was made in confidence for the purpose of obtaining legal advice from the lawyer." *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 637 (D. Colo. 2012); *see also United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) (recognizing that the attorney-client privilege can extend to communications with non-attorneys "when the purpose of the communication is to assist the attorney in rendering advice to the client").

Plaintiff argues that the attorney-client privilege does not attach to the investigation documents because "Ms. Pate was not acting as attorney for Alliance at the time of th[e] interviews" and "there is no evidence that the employees being interviewed were advised that her purpose was to give legal advice to Alliance." Docket No. 29 at 7. As discussed above, however, the fact that Ms. Pate conducted the interviews in her capacity as a third-party investigator does not render the attorney-client privilege inapplicable so long as the purpose of the interviews was to assist Alliance's counsel in providing legal advice. Based on his *in camera* review of the interview summaries and final report, the magistrate judge found that Ms. Pate was

5

"hired by defendant [Alliance] to conduct an investigation under the direction of the defendant's legal counsel for the purpose of assisting legal counsel to provide legal advice around anticipated litigation." Docket No. 34 at 23. The Court finds no clear error in this ruling.[2] The investigation documents further support a finding that the employees participated in the interviews with the understanding that their communications would be treated as confidential and used to facilitate the provision of legal advice to Alliance. The fact that the employees were not expressly advised of this purpose is not dispositive. *See Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981) (finding the employees "sufficiently aware that they were being questioned in order that the corporation could obtain legal advice" where the questionnaire indicated that the information was being gathered by the company's "General Counsel," the policy statement attached to the questionnaire "clearly indicated the legal implications of the investigation," and the communications were treated as "highly confidential").[3]

---

[2]The Court has independently reviewed the documents submitted *in camera* to the magistrate judge for purposes of resolving plaintiff's objection.

[3]Although plaintiff does not raise the issue, some of the interviews conducted by Ms. Pate appear to have involved former employees of Alliance, who were asked to discuss matters that occurred during their employment with the company. While the Court has not found a Tenth Circuit case discussing whether communications involving former employees of a corporation can be protected by attorney-client privilege, other circuits to address the question have "concluded that the distinction between present and former employees is irrelevant for purposes of the attorney-client privilege." *Sandra T.E.*, 600 F.3d at 621 n.4; *see also In re Allen*, 106 F.3d 582, 605 (4th Cir. 1997) (noting that "[m]ost lower courts have followed the Chief Justice's reasoning [in *Upjohn*] and granted the privilege to communications between a client's counsel and the client's former employees"). *But see Newman v. Highland Sch. Dist. No. 203*, 381 P.3d 1188 (Wash. 2016) (holding that the attorney-client privilege does not extend to communications with former employees). The Court ultimately need not resolve the issue. Ms. Pate's summaries of interviews with former employees are also protected from disclosure by the work-product doctrine. *See Sandra T.E.*, 600 F.3d at 621 n.4

Even if the Court were to conclude that the attorney-client privilege does not apply to the investigation documents, the magistrate judge did not clearly err in holding that the documents constitute protected work product. The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the documents "are otherwise discoverable under Rule 26(b)(1)" and the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Applying the analysis set forth in *Martin v. Monfort, Inc.*, 150 F.R.D. 172 (D. Colo. 1993),[4] the magistrate judge found that (1) the information from the Pate

---

(noting that "the work-product doctrine would protect any notes from interviews with former employees as equally as it protects notes from interviews with third parties who never worked for the School District").

[4]The court in *Martin* set forth a "sequential step approach" to determining whether documents fall under the protection of the work product doctrine:

> First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent. . . . If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means.

150 F.R.D. at 172-73 (internal citations omitted).

7

investigation was not relevant "based largely on the representations by the plaintiff . . . that the Pate investigation had nothing to do with David Collardey or his termination"; and (2) the requested documents were prepared in anticipation of litigation for Alliance's in-house counsel and at counsel's direction. Docket No. 34 at 25-26. The magistrate judge further determined that plaintiff had not shown either substantial need for the information or undue hardship, given plaintiff's statement that the Pate investigation was unrelated to his termination and the availability of other means of discovery for obtaining the information sought. *Id.* at 27.

Plaintiff argues that there was insufficient evidence to support the magistrate judge's finding that the interviews were conducted in anticipation of litigation because the anonymous complaint on which the magistrate judge relied to make his finding did not make any mention of a "specific legal action" or "actual legal claim he/she might have against Alliance." Docket No. 29 at 7-8. Contrary to plaintiff's suggestion, however, the work product doctrine is not confined to situations in which litigation is certain. The test is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the *prospect* of litigation." *Martin*, 150 F.R.D. at 173 (quoting 8 Charles Alan Wright et al., *Federal Practice & Procedure* § 2024)); *see also Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006) ("[P]rovided the prospect of litigation was not remote . . . , the fact that the case hadn't begun and might never be brought did not disqualify [attorney's] jottings from the shelter of the work-product doctrine."); *Agility Public Warehousing Company K.S.C. v. Dep't of Defense*, 110 F. Supp. 3d 215, 228 (D.D.C. 2015) ("The work-product doctrine is not limited to those

cases where litigation is a foregone conclusion."); *Masters v. Gilmore*, No. 08-cv-02278-LTB-KLM, 2009 WL 4016003, at *3 (D. Colo. Nov. 17, 2009) ("Litigation need not be imminent for the attorney work-product privilege to apply; rather, it must only be reasonably foreseeable."). Under this standard, both the anonymous complaints and the timing of Ms. Pate's investigation – approximately five months after plaintiff filed his charge of discrimination with the EEOC, Docket No. 25 at 1 (noting Pate investigation took place "in and around May 2017); Docket No. 25-2 (EEOC charge filed December 12, 2016) – were adequate to support a finding that Alliance had reasonable grounds to anticipate litigation. As the magistrate noted in his ruling, Alliance received multiple, anonymous complaints during a similar time frame, one of which specifically threatened legal action in the event that Alliance did not take steps to address employees' concerns about Mr. Thill. *See* Docket No. 29-2 at 1. Given this evidence, the magistrate judge did not clearly err in holding that the investigation documents were created in anticipation of litigation.

Plaintiff also contends that the magistrate judge "made a factual error by misinterpreting Plaintiff's argument on the work product doctrine" to find that the "Pate documents were not highly relevant or necessary for Plaintiff's case." Docket No. 29 at 9. But plaintiff's disagreement with the magistrate judge over the *legal effect* of arguments made in the parties' joint statement does not demonstrate the existence of a "factual error." Even if not dispositive of the issue, plaintiff's statements that the Pate investigation had "no known relationship to disability discrimination" and involved several complaints that "were never made by David Collardey in any context" supported a finding that plaintiff does not have a substantial need for the Pate documents. Docket

9

No. 25 at 4.

In any event, before plaintiff can overcome the protections afforded by the work product doctrine, he must also show that he would suffer an undue hardship if forced to obtain the substantial equivalent of the Pate documents by other means. *See Martin*, 150 F.R.D. at 173. The magistrate judge concluded that plaintiff had failed to make this showing because he could use "depositions, subpoenas, or other means of discovery to obtain information from [Alliance's] current and former coworkers who had experiences with Mr. Thill." Docket No. 34 at 27. Plaintiff has not demonstrated that this finding was clearly erroneous. While plaintiff argues that he "cannot afford to conduct even a few additional depositions . . . , much less dozens of depositions of interviewees," Docket No. 29 at 10, the cost and inconvenience of conducting additional depositions is generally insufficient, standing alone, to constitute an undue hardship. See 8 Charles Alan Wright et al., *Federal Practice & Procedure* § 2025 (3d ed.) (updated Apr. 2019) ("The fact that depositions are expensive is not a sufficient showing unless the expense would amount, in the particular case, to undue hardship." (internal quotation marks omitted)); *compare Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 136 (S.D. Ga. 1982) (holding that "the mere added expense of deposition discovery [did] not amount to undue hardship as required by" Fed. R. Civ. P. 26(b)(3)), *and In re LTV Sec. Litig.*, 89 F.R.D. 595, 616 (N.D. Tex. 1981) (finding that the potential duplication of effort and cost did not demonstrate undue hardship because "duplication of effort and cost is implicit in every application of the work-product rule"), *with Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 617 (N.D. Cal. 2011) (finding sufficient showing of undue hardship where plaintiffs would have had to survey "over 600 restaurants to obtain relevant

information," which "would have cost between $630,000 and $825,000 and taken two to two and a half years to complete"), *and Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 376 (D. Colo. 1993) (holding that defendants had made an adequate showing of undue hardship because it would have been "extremely difficult . . . for defendants to attempt to replicate [the plaintiff's] three-year investigation").

For the foregoing reasons, plaintiff has failed to demonstrate that the magistrate judge clearly erred in declining to compel production of the Pate investigation documents. It is therefore

**ORDERED** that Plaintiff's Objection to Magistrate Judge's Order Denying Discovery Related to Employer's Investigation [Docket No. 29] is **OVERRULED**.

DATED August 12, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge