IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00486-PAB-SKC

DAVID COLLARDEY,

    Plaintiff,

v.

ALLIANCE FOR SUSTAINABLE ENERGY, LLC, and
JOSEPH THILL,

    Defendants.

---

# ORDER

---

This matter is before the Court on Defendant Alliance for Sustainable Energy, LLC's Motion for Summary Judgment [Docket No. 47]. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. *See* Docket No. 1 at 2, ¶ 3.

## I. BACKGROUND[1]

This case arises out of the termination of plaintiff's employment. From January 7, 2013 to November 17, 2016, plaintiff worked for defendant Alliance for Sustainable Energy, LLC ("Alliance") as a Protective Force Officer ("PFO") in the Office of Security and Emergency Preparedness ("OSEP") at the National Renewable Energy Laboratory ("NREL") in Golden, Colorado. Docket No. 47 at 2, 5, ¶¶ 1, 18. Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD"), Bi-Polar II disorder, depression, and anxiety. Docket No. 53 at 5, ¶ 8. He informed Alliance of these conditions at the time he was

---

[1]The following facts are undisputed unless otherwise indicated.

hired. Docket No. 53 at 5, ¶ 9. Plaintiff's conditions were well managed throughout his employment with the use of medication, Docket No. 53 at 5, ¶ 8, and plaintiff was able to perform his job duties. Docket No. 47 at 5, ¶ 23.

On July 7, 2016, plaintiff asked another PFO, "[W]ho's the wise person who put the belt clips on <u>all</u> of the radio batteries?" Docket No. 53 at 6, ¶ 14. Seconds later, another employee, Jeffrey Kastella, entered the room in an angry manner, popped off the belt clips from the batteries with a knife, and turned toward plaintiff. *Id.* at 6-7, ¶¶ 16-17. Believing that Mr. Kastella was trying to intimidate him, plaintiff filed an internal complaint with Alliance's Human Resources Department and a criminal complaint with the Jefferson County Sheriff's Office ("JCSO") on July 7, 2016. *Id.* at 3, ¶¶ 8-9; Docket No. 53 at 7, ¶¶ 22-23. After an investigation, which Alliance was aware of, the JCSO determined that no crime had been committed. Docket No. 47 at 4, ¶ 11.

The director of OSEP, Joseph Thill, *id.* at 2, ¶ 2, did not discuss the police report or investigation with plaintiff for four months after the knife incident. *Id.* at 4, ¶ 13. However, on November 16, 2016, plaintiff was ordered to meet with Mr. Thill and Donna Wachter, Alliance's human resources manager. Plaintiff was not provided any information concerning the nature or subject matter of the meeting beforehand. Docket No. 53 at 9-10, ¶¶ 33-36. Plaintiff emailed Mr. Thill, Ms. Wachter, and people in Human Resources, the Ombudsman's office, and the legal department to ask what the meeting was about, but received no response. *Id.*, ¶¶ 35-36. On November 15, 2016, plaintiff encountered Mr. Thill outside of work. *Id.* at 10, ¶ 38. Referring to the next day's meeting, Mr. Thill told plaintiff that "not everything is a conspiracy" and that he and Ms.

2

Wachter "just wanted to sit down and see how [plaintiff] was doing." *Id.*, ¶¶ 38-39. Mr. Thill also stated to plaintiff, "[Y]ou are weird." *Id.* at 6, ¶ 13.

During the meeting on November 16, 2016, Mr. Thill asked plaintiff about alleged inconsistencies in his statements to Ms. Wachter and the JCSO about the knife incident with Mr. Kastella. Docket No. 47 at 4, ¶ 15; Docket No. 53 at 10, ¶ 43. Mr. Thill questioned plaintiff in an angry manner and threatened to file a complaint against the investigator from the JCSO regarding his statement that Mr. Kastella had a propensity for violence. Docket No. 53 at 11-13, ¶¶ 44, 54-55, 61-62. Mr. Thill also stated that he did not trust plaintiff "because of the knife incident." *Id.* at 13, ¶ 64. Plaintiff was the only employee interviewed about inconsistencies in his statements even though at least two other employees had also made inconsistent statements to Ms. Wachter and the JCSD regarding the knife incident. *Id.* at 14, ¶¶ 70-72.

On November 17, 2016, Mr. Thill informed plaintiff over the phone that he was being terminated. Docket No. 47 at 5, ¶¶ 18-19. Plaintiff's written notice of termination, which he received the following day, stated that plaintiff was being terminated due to his "continued and repeated pattern of misrepresentations related to workplace situations over the past two years." *Id.* at 5, ¶ 21; *see also* Docket No. 47-4 (notice of termination). Until his termination, plaintiff had an excellent performance record at Alliance and had never been reprimanded for misrepresenting a workplace situation. Docket No. 53 at 4-5, ¶¶ 2-3, 5-6.

Plaintiff filed this lawsuit on February 26, 2018. Docket No. 1. Plaintiff asserts claims against Alliance for (1) disability discrimination in violation of the Americans with

3

Disabilities Act of 1990 ("ADA), as amended, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; (2) violation of Colo. Rev. Stat. § 24-34-402.5; and (3) wrongful discharge in violation of Colorado public policy. *Id.* at 14-17. Plaintiff also alleges a claim against Mr. Thill for intentional infliction of emotional distress. *Id.* at 18-19. On February 21, 2019, Alliance ("defendant") moved for summary judgment on plaintiff's first three claims for relief. Docket No. 47. Plaintiff filed a response to the motion on March 14, 2019, Docket No. 53, to which defendant replied on March 28, 2019. Docket No. 56.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

4

evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

#### A. Disability Discrimination

Defendant moves for summary judgment on plaintiff's ADA and Rehabilitation Act claims. *See* Docket No. 47 at 7. Where, as in this case, a plaintiff does not present direct evidence of discrimination, a court applies the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate disability discrimination claims arising under the ADA and the Rehabilitation Act. *See Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (applying framework to ADA claim); *Cummings v. Norton*, 393 F.3d 1186, 1189 n.1 (10th Cir. 2005) (applying

5

framework to Rehabilitation Act claim). The first step of that framework "requires the plaintiff to establish a prima facie case of discrimination by showing (1) that he is disabled within the meaning of the ADA [or the Rehabilitation Act]; (2) that he is qualified for the job held or desired; and (3) that he was discriminated against because of his disability." *Lincoln*, 900 F.3d at 1192 (internal quotation marks omitted); *see also McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (articulating four elements of a prima facie claim under the Rehabilitation Act: (1) the plaintiff is disabled under the Act; (2) the plaintiff would otherwise be qualified to participate in the program; (3) the program is a federal agency or receives federal financial assistance; and (4) the program has discriminated against plaintiff).[2] If this showing is made, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the adverse employment action. *Lincoln*, 900 F.3d at 1193 (internal quotation marks omitted). If the employer offers a legitimate justification, the plaintiff can prevail on his discrimination claim only by showing that the employer's stated reason for the employment action is pretext for discrimination. *Id.*

Defendant does not dispute the first and second elements of plaintiff's prima facie case. *See* Docket No. 47 at 7-8; *see also id.* at 5, ¶ 23; Docket No. 53 at 5, ¶ 8. Instead, defendant argues that plaintiff's claim fails on the third element because "[t]here is no evidence that Alliance took adverse action against Collardey because of his alleged disability or perceived disability." Docket No. 47 at 7. In the alternative, defendant contends that it had a legitimate, nondiscriminatory reason for plaintiff's

---

[2]The differences between an ADA claim and a claim arising under the Rehabilitation Act are immaterial in this case.

termination, which plaintiff cannot show was pretextual. *Id.* at 8.

The Court need not reach the issue of pretext because plaintiff's evidence is not sufficient to show that he was terminated under circumstances giving rise to an inference of disability discrimination. *See Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014). While a plaintiff's burden of establishing a prima facie case under the *McDonnell Douglas* framework is not "onerous," *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015), "it is also not empty or perfunctory." *Vinez v. Sky Chefs, Inc.*, 658 F. App'x 390, 393 (10th Cir. 2016) (unpublished) (internal quotation marks omitted). It "requires [a] plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision." *Lincoln*, 900 F.3d at 1193 (emphasis omitted).

Viewed in a light most favorable to plaintiff, the evidence shows that Alliance, Mr. Thill, and Michael Howe, plaintiff's direct supervisor, were aware of plaintiff's medical conditions at the time Alliance terminated plaintiff's employment. *See* Docket No. 53 at 5, ¶ 9; Docket No. 53-5 at 3, ¶ 13 (stating that Mr. Howe was informed of plaintiff's PTSD and depression); Docket No. 53-15 at 15, 232:21-233:1 (testifying that Mr. Thill was informed of plaintiff's "neurological problems for which [plaintiff took] meds").[3] However, the only evidence plaintiff cites to support an inference that defendant terminated plaintiff because of his medical conditions consists of Mr. Thill's November 15, 2016 statements to plaintiff that "not everything is a conspiracy" and "you are weird." *See* Docket No. 53 at 6, ¶¶ 12-13. These statements are too vague to allow a

---

[3]Plaintiff does not cite any evidence establishing when, during his employment, he informed Mr. Thill and Mr. Howe of his medical conditions.

7

reasonable jury to find a connection with plaintiff's alleged disabilities, and plaintiff fails to provide information regarding the context of the statements to allow such a connection to be inferred.[4]  As a result, the Court finds the statements insufficient, standing alone, to satisfy the causal element of plaintiff's prima facie case.  *See Zoutomou v. Copper*, 550 F. App'x 647, 651 (10th Cir. 2013) (unpublished) (finding that supervisor's "abstract remark" about needing "more energy" from the plaintiff did not support an inference of age discrimination, as "there [was] nothing about the statement to indicate a connection to [the plaintiff's] age"); *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (finding no causal nexus between employer's comments and employee's layoff where the employee "ha[d] not given enough information for [the court] to understand the context or broaden any inferences of the statement"); *Auble v. Babcock & Wilcox Tech. Servs. Y-12,* LLC, 2015 WL 6049825, at *11 (E.D. Tenn. Oct. 15, 2015) (holding that co-workers' statements describing the plaintiff as "weird," "creepy," and having a "dull" affect did not, on their face, support an inference of disability bias); see also *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (noting that "isolated or ambiguous comments may be . . . too abstract" to support an inference of discrimination (internal quotation marks and bracket omitted)).

Plaintiff's arguments regarding pretext do not support a different conclusion.  *See* Docket No. 53 at 18.  Even assuming that the evidence creates a genuine issue of

---

[4]While plaintiff asserts in his affidavit that Mr. Thill's comments "made no sense except in the context of [plaintiff's] disabilities," Docket No. 53-5 at 3, ¶ 11, this conclusory statement, unsupported by any factual detail, is insufficient to create a genuine issue of fact.  *See Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("[C]onclusory allegations without specific supporting facts have no probative value." (internal quotation marks omitted)).

fact as to the truthfulness or accuracy of defendant's stated reason for plaintiff's termination, the Tenth Circuit has held that evidence of pretext does not, "in and of itself, create an inference of discriminatory intent to establish a prima facie case." *Vinez*, 658 F. App'x at 394. As explained in *Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136 (10th Cir. 2008),

> By conflating evidence tending to cast doubt on an employer's stated reasons for an employment decision with the burden of establishing an inference of actionable discriminatory animus in the first instance, Plaintiffs seek to gain the benefit of that inference without having to establish it. Without a demonstrable nexus between aspersions cast on an employer's stated reasons and invidious intent, evidence of "pretext" merely establishes that an employer's stated reason for its actions may not be its real or only reason. It does not establish that the real or "but-for" reason was unlawful discrimination.

*Id.* at 1144. As discussed above, plaintiff has not carried his initial burden of establishing an inference of disability discrimination. Accordingly, any evidence of pretext is insufficient, standing alone, to satisfy plaintiff's summary judgment burden.

For the foregoing reasons, defendant is entitled to summary judgment on plaintiff's ADA and Rehabilitation Act claims.

### B. State Law Claims

Plaintiff's remaining claims arise under state law. Although the Court may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts

should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted). This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits." *Id.* at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

Plaintiff does not argue that the Court should retain jurisdiction over his state law claims if the federal claims are dismissed, and the Court does not find any compelling reason to do so. Accordingly, plaintiff's second, third, and fourth claims for relief will be dismissed without prejudice. *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (unpublished) (holding that, when declining to exercise supplemental jurisdiction over state-law claims, court "had discretion either to remand the claims to the state court or to dismiss them"); *see also* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Alliance For Sustainable Energy, LLC's Motion for Summary Judgment [Docket No. 47] is **GRANTED** in part and **DENIED** in part. It is

further

**ORDERED** that plaintiff's first claim for relief is dismissed with prejudice. It is further

**ORDERED** that plaintiff's second, third, and fourth claims for relief are dismissed without prejudice. It is further

**ORDERED** that Defendant Joseph Thill's Motion for Summary Judgment [Docket No. 46] is **DENIED** as moot. It is further

**ORDERED** that, within 14 days of this order, defendant Alliance For Sustainable Energy, LLC may have its costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 16, 2019.

                                    BY THE COURT:

                                    s/Philip A. Brimmer
                                    PHILIP A. BRIMMER
                                    Chief United States District Judge